UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON PAUL MATA,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-01517-CDB (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>(Docs. 12, 15) |

Plaintiff Jon Paul Mata ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 12, 15). Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.[1]

**I.     BACKGROUND**

    **A. Administrative Proceedings and ALJ's Decision**

On May 29, 2020, Plaintiff filed a Title II application for disability insurance benefits and Title XVI application for supplemental security income, alleging a period of disability beginning

---

[1] On January 23, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 10).

January 1, 2017. (AR 16, 207-215). Plaintiff's application was denied and, upon reconsideration, denied again. (AR 56-113). Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 166-175, 191-194). On August 31, 2021, the assigned ALJ, Matilda Surh, held a hearing; Plaintiff attended with counsel Richard Procida, as did vocational expert ("VE") Laurence S. Hughes. (AR 16, 32-55). The ALJ issued her decision on October 6, 2021, finding Plaintiff not disabled. (AR 16-31). On September 23, 2022, the Appeals Council denied Plaintiff's request for review. (AR 1-6). Thereafter, Plaintiff filed the instant action.

In her decision, the ALJ used the five-step sequential evaluation process promulgated by the Social Security Administration for determining whether an individual is disabled. (AR 17-18; citing 20 C.F.R. 404.1520(a) & 416.920(a)). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2017. At step two, the ALJ concluded that Plaintiff had the following severe impairments: rheumatoid arthritis, lupus, and peripheral neuropathy. (AR 18). The ALJ also found that Plaintiff's obesity was a non-severe impairment. (AR 19). At step three, after identifying these impairments, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19-20). The ALJ reached this determination by considering the four broad functional areas of mental functioning listed in the "paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The first functional area is understanding, remembering, or applying information. The second functional area is interacting with others. The third functional area is concentrating, persisting, or maintaining pace. Lastly, the fourth functional area is adapting or managing oneself. The ALJ found that the record did not support a "marked" limitation in any of the four areas. (AR 19).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(a). (AR 20-24). The ALJ determined that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms but the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record. (AR 20-21). The ALJ, citing to treatment notes, prior administrative medical findings, activities of daily living, and a third-party statement, determined that the evidence

of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments. (AR 20-24).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 24). The ALJ concluded by discussing the VE's testimony and the Dictionary of Occupational Titles ("DOT"), finding that Plaintiff would be able to perform the requirements of jobs that exist in significant numbers in the national economy, namely document preparer, addresser, and stuffer. (AR 24-25).

The ALJ found Plaintiff had not been under a disability from January 1, 2017, through the date of the decision. (AR 25-26).

**B. Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.   STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments

recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

///

///

### III. ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. (Doc. 1). Plaintiff raises a single issue for this Court's review: whether the ALJ erred by failing to adequately consider the impact of Plaintiff's obesity on other impairments. (Doc. 12 at 3-7).

**A. Parties' Arguments**

Plaintiff asserts that the ALJ erred by failing to adequately consider the impact of Plaintiff's obesity on his other physical conditions, such as rheumatoid arthritis, lupus, and peripheral neuropathy. (Doc. 12 at 3). Plaintiff contends that the ALJ's analysis was inadequate because it failed to discuss the "nature, severity and functions effects" as required by *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Plaintiff argues that the ALJ's analysis "is too narrow" and the "ALJ's rationale is not consistent with the litmus test outlined by SSR 19-2p," as the ALJ is "supposed to consider all symptoms." *Id.* at 5.

Plaintiff notes that "joint pain was a major component of Plaintiff's disability" and that he "had pain in his hips, which are weight bearing joints." Plaintiff points out that obesity frequently is identified alongside his other diagnoses in the record and, on multiple occasions, he is described as having an elevated body mass index ("BMI"). He was provided "face-to-face behavioral counseling for obesity" as well as nutritional advice by physician Silvia Diego. *Id.* Plaintiff was advised to use a cane or walker, to take short rest breaks, and to lose weight. Given this record evidence, Plaintiff argues that the ALJ's inadequate analysis of his obesity under SSR 19-2p was not harmless, as the decision limited him to work at the lightest exertional level, namely sedentary work, and any "erosion in the sedentary job base could eliminate all work in the United States economy … rendering him disabled." *Id.* at 6.

Defendant argues that the ALJ properly found obesity to be a non-severe impairment and, in doing so, the ALJ adequately evaluated the medical opinion evidence, Plaintiff's subjective complaints, and Plaintiff's daily activities. (Doc. 15 at 7-9). Defendant contends that the ALJ assessed Plaintiff's obesity at step two and considered the impairment in the RFC and, as "errors at step two are harmless and the ALJ continued through the sequential evaluation," the ALJ, therefore, "did not commit any reversible error." *Id.* at 9. Defendant notes that Plaintiff did not "assert obesity

6

on his disability forms" and neither he nor his attorney "testified at the hearing that Plaintiff's obesity was the cause of his inability to work." Defendant argues that none of the evidence establishes that Plaintiff "met or equaled any listing." *Id.* at 10-11 (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

**B. Analysis**

Social Security Rulings ("SSRs") "do not have the force of law" but do "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and, thus, courts defer to SSRs "unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

The Social Security Administration removed obesity from the listings of impairments in 1999 and, since then, has issued SSRs addressing how obesity is to be considered when assessing disability. SSR 00-3p was in effect starting in 2000 and was superseded by SSR 02-1p in 2002. SSR 02-1p was superseded by SSR 19-2p in 2019. *See C.C. v. O'Malley*, No. 23-CV-00408-LJC, 2024 WL 1354437, at *4 (N.D. Cal. Mar. 28, 2024) (citing SSR 19-2p, Titles II & XVI: Evaluating Cases Involving Obesity).

Under SSR 19-2p, the Commissioner's current governing SSR, the functional limitations caused by the medically determinable impairment ("MDI") of obesity, "alone or in combination with another impairment(s), may medically equal a listing if, for example, obesity increases the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing." *Id.* (quotations omitted). "Under the SSR, the Social Security Administration will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s), but instead evaluates each case based on the information in the case record to determine how obesity affects other impairments." *Id.* "As with any other impairment, the Social Administration must explain how it reached its conclusion on whether obesity causes any limitations." *Id.*

Plaintiff cites to *Celaya* for the proposition that ALJ's analysis of Plaintiff's obesity was inadequate because it failed to discuss the nature, severity, and functional effects of obesity. (Doc. 12 at 5). In *Celaya*, the plaintiff filed her disability application when the pre-1999 listing for obesity

1  was in effect. The plaintiff argued that she should have qualified automatically for disability status
2  based on her height and weight. The record did not show she consistently met the weight threshold
3  for her height, however. *Celaya*, 332 F.3d 1177, 1180–81 & n.1.

4  The Ninth Circuit held that, even if plaintiff's obesity did not meet the listing, "[g]iven the
5  potential effect of obesity on [plaintiff's diabetes and hypertension], the ALJ had a responsibility
6  to consider their interactive effect. In determining whether a claimant equals a listing under step
7  three of the Secretary's disability evaluation process, the ALJ must explain adequately his
8  evaluation of alternative tests and the combined effects of the impairments. The ALJ was
9  responsible for determining the effect of Celaya's obesity upon her other impairments, and its effect
10 on her ability to work and general health, given the presence of those impairments." *Id.* at 1182
11 (citation and quotations omitted).

12 The Ninth Circuit explained that the "ALJ's exclusion of obesity from his analysis is error
13 in that he was addressing an illiterate, unrepresented claimant who very likely never knew that she
14 *could* assert obesity as a partial basis for her disability. The ALJ always has a 'special duty to fully
15 and fairly develop the record and to assure that the claimant's interests are considered ... even when
16 the claimant is represented by counsel.'" *Id.* at 1183 (emphasis in original; citing *Brown v. Heckler*,
17 713 F.2d 441, 443 (9th Cir.1983)).

18 Defendant cites to *Burch* for the proposition that none of the evidence set forth by Plaintiff
19 establishes that he met or equaled any listing. (Doc. 15 at 10-11). At the time of the events
20 discussed in *Burch*, SSR 02-1p was in effect. The Ninth Circuit explained that "Burch's entire
21 obesity argument relies on this Court's recent decision in [*Celaya*]. However, that case is
22 distinguishable from the case at bar." The Ninth Circuit set forth that "[h]ere, the record does not
23 indicate that Burch's obesity exacerbated her other impairments (other than possibly her back pain).
24 More significantly, Burch was represented by counsel." Further, "the ALJ did not find that Burch's
25 obesity was a 'severe' impairment." *Burch*, 400 F.3d at 682.

26 The Ninth Circuit discussed the record evidence cited by the ALJ, noting that Burch was
27 considered "somewhat obese," that obesity "likely contributed to her back discomfort," she had the
28 "RFC to perform a significant (though not full) range of light work," and concluding that the "ALJ

8

adequately considered Burch's obesity in his RFC determination. Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider." *Id.* at 684 (citations and quotations omitted).

Importantly, the Ninth Circuit acknowledged that "[t]here was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work." *Id.* at 683.

Applying the *Celeya*/*Burch* holdings here, the ALJ found Plaintiff had obesity but did not find it to be a severe impairment:

> The claimant has obesity. His body mass index was above 35 at times. Despite his body mass index, the claimant generally exhibited no significant cardiovascular or respiratory abnormalities. Additionally, he generally exhibited normal gait. Nonetheless, obesity shall be considered in determining the residual functional capacity pursuant to SSR 19-2p.

(AR 19; citing AR 549, 559, 589, 597, 601, 973).

In the RFC, the ALJ found Plaintiff could perform sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can lift 20 pounds occasionally and 10 pounds frequently; stand or walk for two out of eight hours; no limits on sitting; only occasional ramps or stairs; no ladders, ropes or scaffolds; occasional balance, stoop, kneel, crouch, or crawl; frequent bilateral handling and fingering.

(AR 20).

Aside from the above discussion (AR 19), the ALJ briefly mentions obesity twice elsewhere in her decision, both times in passing when explaining the RFC, without further elaboration. *See* (AR 22-23).

The facts before the Court offer similarities with those in *Burch*. Both the Plaintiff here and the plaintiff in *Burch* were represented by counsel and did not present testimony at their hearings

1  regarding limitations from obesity. (AR 34-54, 228). Both the ALJ here and the ALJ in *Burch*
2  found obesity to be a non-severe impairment. (AR 19). In *Burch*, there was no record evidence of
3  the claimant's obesity limiting her functioning or exacerbating her conditions and, thus, the ALJ
4  adequately considered the plaintiff's obesity in the RFC. Here, however, there is some record
5  evidence of a possible link between Plaintiff's impairments and obesity.

6  Turning to the record evidence, first, Defendant is correct that obesity is not mentioned by
7  either Plaintiff or his attorney in the disability report (AR 228) nor during the hearing before the
8  ALJ (*see* AR 34-54). Nevertheless, Plaintiff contends that the record shows "consistent medical
9  evidence supporting Plaintiff's obesity." (Doc. 12 at 7). For instance, Plaintiff notes that managing
10 obesity was listed as a goal in his medical records. *Id.* at 6. The record cited in support, dated
11 August 26, 2020, and prepared by nurse Analene Z. Cesar, includes a table titled "Comprehensive
12 Car Plan." (AR 1042-43). In the table are five "Problems," one of which is "Obesity." (AR 1043).
13 However, the row for "Obesity," unlike every other row, contains no text regarding any care plan.
14 There is a "Start Date" set for October 16, 2019, without any other text, and no details under the
15 accompanying columns titled "Goals," "Objectives," and "Interventions," respectively. *See id.*
16 Every other row aside from "Obesity" includes details regarding a care plan, with each such passage
17 signed by a care provider, with a corresponding date and time. *See* (AR 1042-43). As such, this
18 record is ambiguous as to its conclusions regarding obesity.

19 However, other records cited by Plaintiff show counseling for obesity and mention potential
20 impact on joints. For example, a record signed by physician Silvia Diego and dated February 11,
21 2021, states that Dr. Diego had a "[f]ace-to-face behavioral counseling for obesity" with Plaintiff,
22 for "15 minutes." The record mentions recommending "healthy weight as extra weight as extra
23 strain [sic] on the joints." (AR 945). Another record signed by Dr. Diego and dated May 13, 2021,
24 shows another such counseling session and includes the same language regarding extra weight as
25 an extra strain on the joints. (AR 937). Earlier records from Dr Diego, signed and dated August
26 22, 2020, and concerning a visit on August 17, 2020, recommend Plaintiff "[r]each and stay at a
27 healthy weight … Extra weight can strain the joints, especially the knees and hips, and make the
28 pain worse. Losing even a few pounds may help." (AR 879, 921, 965).

10

1     Other records refer to obesity but do not discuss it and, aside from recommending a follow-up with a primary care physician, do not connect it to any other impairments nor provide any resulting limitations. *See*, *e.g.*, (AR 835, 841, 1005, 1028, 1037). Still other records show a BMI ranging from approximately 35 to approximately 41. *See* (AR 309, 371, 382, 386, 388, 394, 943, 984-85, 1013, 1046). Lastly, other records cited by Plaintiff in his motion do not set forth any clear findings concerning obesity and include no limitations nor discussion thereto. *See* (AR 327-28, 405-08, 439, 446).

    Taken in total, unlike in *Burch*, it cannot be said here that the "medical record is silent as to whether and how claimant's obesity might have exacerbated [his] condition." *Burch*, 400 F.3d at 683. The records from Dr. Diego suggest a connection between Plaintiff's obesity and the strain on his joints and pain. The ALJ found Plaintiff's rheumatoid arthritis to be a severe impairment. (AR 18). Rheumatoid arthritis is a disease that affects the joints.[2] Additionally, Plaintiff's BMI is consistently noted in the record as being 35 or above.

    The ALJ provides, in total, only two sentences concerning obesity and its possible impact on other impairments: "Despite his body mass index, the claimant generally exhibited no significant cardiovascular or respiratory abnormalities. Additionally, he generally exhibited normal gait." (AR 19). However, a lack of cardiovascular or respiratory abnormalities and a generally normal gait do not provide a sufficient explanation concerning how obesity impacted Plaintiff's other impairments and resulting limitations, for example, relating to the strain on his joints or pain, or whether obesity caused other, less obvious, symptoms. Indeed, SSR 19-2p sets forth that the "combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a *weight-bearing joint* may have more pain and functional limitations than the person would have due to the arthritis alone." SSR 19-2p; Titles II and XVI: Evaluating Cases Involving Obesity, 84 FR 22924-01 (emphasis added); *see Sasser v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01725-PHX-DJH, 2024 WL 1298435, at *3 (D. Ariz. Mar. 27, 2024) ("The ALJ also stated that

---

[2] *See* "Rheumatoid Arthritis," National Institute of Arthritis and Musculoskeletal and Skin Diseases, *accessible at* https://www.niams.nih.gov/health-topics/rheumatoid-arthritis (last visited October 20, 2025).

11

Plaintiff's obesity was not a severe impairment and that her 'weight, including the impact on her ability to ambulate as well as the effect to her other body systems, has been considered when determining the claimant's obesity was nonsevere.' However, the ALJ did not discuss how Plaintiff's obesity causes limitations on Plaintiff's mental capabilities or whether Plaintiff's obesity caused other less obvious symptoms."); *see also C.C. v. O'Malley*, 2024 WL 1354437, at *9 ("The ALJ rejected that testimony based in large part on medical records that sometimes indicated normal gait and abilities, such as standing on heels and toes, which do not directly speak to C.C.'s ability to walk, stand, or sit for sustained periods.") (citation omitted).

An ALJ's mere acknowledgment of obesity as an impairment is insufficient when the ALJ fails to provide "meaningful analysis" to "explain how Plaintiff's obesity impacts her other impairments or why he does not factor Plaintiff's obesity in her RFC assessment." *Mary Elizabeth C. v. Saul*, No. CV 19-3723-KS, 2020 WL 2523116, at *16 (C.D. Cal. May 18, 2020) (citing *Celaya*, 332 F.3d at 1182). Here, the record presents evidence of Plaintiff's obesity exacerbating his conditions and the ALJ failed to provide a meaningful analysis of how obesity impacts Plaintiff's other impairments, thereby failing to explain how the ALJ reached her conclusion on whether obesity caused any limitations, as required by SSR 19-2p and *Celaya*. The ALJ mentioning simply that certain limitations in the RFC were included "due to a combination of the claimant's obesity" and other conditions is insufficient. (AR 22-23); *see Yolanda P. v. Kijakazi*, No. 1:20-cv-03245-JAG, 2022 WL 17248127, at *4 (E.D. Wash. Sept. 30, 2022) (holding that ALJ's failure to address what effects plaintiff's obesity had on her knee impairments supported remand, notwithstanding ALJ's conclusory assertion that a restriction to sedentary work with additional conditions sufficiently accommodated any limitations caused by obesity).

Because the record medical evidence suggests a possible connection between Plaintiff's rheumatoid arthritis and his obesity, the ALJ's failure to specifically address obesity in combination with Plaintiff's other impairments is legal error that is not harmless. *See Peterson v. Barnhart,* 213 Fed. Appx. 600, 605 (9th Cir. 2006) ("it is the ALJ's responsibility to determine the effect of a claimant's obesity on her other impairments, as well as its effect on her overall health and ability to work, given the existence of other impairments.") (citing *Celaya*, 332 F.3d at 1182); *C.C. v.*

*O'Malley*, 2024 WL 1354437, at *10 ("It is the ALJ's role to resolve this sort of mixed record, but the ALJ has a responsibility in such cases to explain the reasoning behind that decision, taking into account all relevant impairments.") (citing SSR 19-2p & *Celaya*, 332 F.3d at 1183); *Young v. Comm'r of Soc. Sec.*, No. 1:22-CV-00161-CDB (SS), 2024 WL 5186826, at *14 (E.D. Cal. Dec. 20, 2024) ("As the ALJ concluded, degenerative disc disease of the cervical and lumbar spine is a severe impairment and Dr. Lobo's medical records reflect that Plaintiff's obesity may aggravate this other impairment … The ALJ did not address these points in her decision and thus the record is undeveloped.").

Because the ALJ's failure to address *how* Plaintiff's obesity affected his other impairments deprives the Court of "reviewable, on-the-record findings," the Court will not reach the question of whether the record could, in fact, support the ALJ's conclusions. *See C.C. v. O'Malley*, 2024 WL 1354437, at *10 (citing *Celaya*, 332 F.3d at 1183).

\*   \*   \*   \*   \*

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings;[3] where the record has been fully developed;[4] or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff is entitled.[5]

Here, Plaintiff seeks an order from the Court remanding the action for further proceedings (Doc. 12 at 7) and the Commissioner argues that the Court should affirm the ALJ's decision finding Plaintiff not disabled (Doc. 15 at 13). The Court concludes that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where … an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper

---

[3] *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980).
[4] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).
[5] *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

13

approach is to remand the case to the agency.").

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 12) is GRANTED;

2. This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3. The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated: **October 22, 2025**

UNITED STATES MAGISTRATE JUDGE

14